## THOMAS *et al.* v. HILL.

No. 3241.   Opinion Filed October 14, 1913.

(135 Pac. 940.)

1.  **APPEAL AND ERROR—Technical Error—Verdict.**  Plaintiff in error has no right to complain of an error of the trial court which is in no wise prejudicial to his interests.  Nor does the fact that the error would have required a reversal, had it been urged by his antagonist, change the rule.

2.  **BROKERS—Actions for Commissions—Sufficiency of Evidence.**  Evidence considered in the opinion and held sufficient.

3.  **INSTRUCTIONS APPROVED.**  The instructions were substantially correct and fairly presented the issues.

(Syllabus by Brewer, C.)

*Error from County Court, Grady County;*
*N. M. Williams, Judge.*

Action by H. L. Hill against John Thomas and others. Judgment for plaintiff, and defendants bring error.  Affirmed.

*Bond & Melton,* for plaintiffs in error.

*F. E. Riddle,* for defendant in error.

Opinion by BREWER, C.  The defendant in error, Hill, brought this suit against Campbell, Thomas, and a man named Baker to recover $250 alleged to be due him as commission for his services in connection with the sale of a farm.  It developed at the trial that Baker was a son-in-law and Campbell a step-

son of Thomas; that the title to the land was in Thomas; that Campbell had a one-half interest in any profit Thomas might sell the land for, over and above what he had paid for it; Baker had no interest in the land, except that he claimed it had been listed with him for sale and that he was entitled to a commission. There was evidence that Campbell and Baker went into plaintiff's real estate office together, and that Campbell listed the land for sale and agreed to the usual five per cent. commission, in the presence of Baker; Campbell admitted being in plaintiff's office and talking about the land but denied that he listed the property; it was also denied that Baker was present. Thomas, the owner of the title to the land, had not seen plaintiff until the day of the sale. On the day of the sale the purchaser called on plaintiff to negotiate for a farm, and plaintiff mentioned several tracts of land, among them the one involved here. He then took the purchaser and carried him out and showed him the Thomas land; plaintiff and the purchaser then drove to the home of defendant Campbell and had him call up defendant Thomas and arrange a meeting at a place in town that day; they all met, and the purchaser was introduced to Thomas by plaintiff and the business nature of the visit explained. The defendant Thomas, Campbell, and the purchaser all drove out to the land that evening, looked it over, and the sale was made for $5,000 cash.

Plaintiff testified that while on the land Thomas said to him: "If you cannot land this man, maybe you can get another buyer."

The purchaser in his deposition testified as follows:

"Q. If you state you had a business transaction with the parties in reference to the purchase of a tract of land in Grady county, Okla., then state fully what connection the plaintiff, H. L. Hill, had with said deal and transaction, if any? A. H. L. Hill taken me out and showed me the land that I bought. Q. State whether or not the plaintiff, H. L. Hill, before the purchase and consummation of the deal for said land, gave you any information in regard to the said land. If so, state in what particular and what information he gave you. A. Yes, I went

into his office to see about buying some land, and he told me about this land.  Q. State whether or not the plaintiff, H. L. Hill, had anything to do with bringing about the purchase of said land on your part.  If so, state what he had to do with your purchasing said land.  A. Yes, he drove me over to Tuttle and made me acquainted with Mr. Campbell and Mr. Thomas. Q. State whether or not, if you know, you would have purchased said land had it not been for the plaintiff, H. L. Hill; if not, then state why.  A. I would not, because I would not have looked at the land."

It is undisputed that, when Thomas bought the land, Campbell had a lease on it, and that he surrendered his lease in consideration of one-half of all net profits made on the land which was bought for resale.  That after the sale Campbell received his share of the profits, less $125 reserved by Thomas as one-half of the commissions.

The court instructed the jury that Baker was not liable. Neither side complains.  The jury returned a general verdict against Thomas alone, making no mention of Campbell, but of course this released him.

Appellant Thomas urges as ground for reversal:  (1) That the court should have sustained his motion for judgment notwithstanding the verdict of the jury.  (2) That the demurrer to the evidence should have been sustained.  (3) That the instructions are erroneous.

Taking the points up in their order, it is our opinion that the motion for judgment *non obstante veredicto* was properly overruled under the peculiar facts of this case.  It is true that, if Thomas was liable, Campbell was also technically liable; and, if Thomas had been injured by his discharge by the jury (that is, if Thomas had the right to have judgment go against and a contribution towards its payment made by his codefendant Campbell), then his point would be well taken and the case would be reversed.  But the evidence shows, and without dispute, that, in the settlement of profits arising out of the sale of the lands, Thomas retained and reserved in his own hands a sum equal to one-half of the amount sued for here for the express purpose of settling the commissions due somebody for the sale.  Therefore

had judgment gone against both, while plaintiff could have forced payment from both or either, Thomas could not, as between him and Compbell, have forced a contribution from Campbell towards the payment of the judgment. So the rights of Thomas were not prejudiced by the verdict. The plaintiff could have legally complained, but does not. Thomas, having had no rights invaded, cannot do so successfully. Unless an error is prejudicial, it should not work a reversal of a case. Section 4791, Rev. Laws 1910.

2. What has been said on the above point has no doubt indicated that in our judgment there was evidence tending to show liability as to Thomas, and that therefore the demurrer to the evidence was properly overruled. We think a careful reading of the facts stated and the meager quotations from the evidence set out makes it unnecessary to go into a detailed analysis of the evidence, but we call attention to the evidently intimate business and family relations of these defendants. They were both equally interested in the sale of the land (that is, in the profits). The land was bought to be put on the market. One of the parties did contract for its sale by plaintiff and for his commissions. A purchaser being found, the plaintiff shows him the land and is primarily and solely responsible for the sale, as testified to by the purchaser. Plaintiff takes the purchaser from the land, which seems to suit him, to the home of Campbell, one of the interested parties. This party, who made the contract with plaintiff, calls up his stepfather, the other party interested in the sale and joint owner of any profits to be made. A meeting is arranged over the telephone. When the parties all meet, plaintiff introduces his prospective purchaser, and at plaintiff's suggestion the purchaser and Thomas step aside from the crowd and privately discuss matters. Plaintiff and his purchaser, together with both Campbell and Thomas, make another trip to the land. Thomas suggests to plaintiff that, if the deal fails, maybe he can find another purchaser. The deal is closed. It is certain Thomas received and profited by plaintiff's services. When introduced to the purchaser by plaintiff, and the nature of the business was mentioned, Thomas asked no ques-

tions, it is true, as to why plaintiff had left his home town and brought him a purchaser; but Campbell, his copartner in the profits to be made, and with whom plaintiff had contracted to act as agent, was present, and all the parties remained together until the sale was made. Considering all the evidence and circumstances, even without any direct proof that Thomas authorized or was aware of Campbell's action in listing the land for sale with plaintiff at the time it was done, yet the evidence and legitimate inference to be drawn from it, viewed in the light of the situation and actions of the parties, was ample to lead the jury to conclude that Thomas was fully aware of and acquiesced in Campbell's action in listing the land. But, if this conclusion should be thought open to question, it is certainly true that the jury could have found that prior to the sale Thomas became aware of plaintiff's situation with regard to the sale of the land and with such knowledge accepted the benefit of his services, thus ratifying Campbell's agreement with him.

3. The instructions of the court were predicated on a view of the evidence similar to those expressed above, and under this view we see no error in the instructions. In fact, an examination of the entire charge of the court shows that it was not only a fair statement of the law but that every phase of the case, and the rights of all the parties, were carefully considered and protected.

The judgment should be affirmed.

By the Court: It is so ordered.